IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CRIMINAL NO. 3:10-524-CMC |
| | ) | |
| v. | ) | **OPINION and ORDER** |
| | ) | |
| Marcus Dewayne Jones, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant, proceeding *pro se*, seeks relief in this court pursuant to 28 U.S.C. § 2255. Defendant raises five (5) Grounds for Relief. The Government filed a motion for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Defendant of the summary judgment procedure and the consequences if he failed to respond. Defendant has responded to the Government's motion and this matter is ripe for resolution.

**I. BACKGROUND**

Defendant was indicted in this District in 2010 on four substantive counts of drug distribution and an additional count relating to his role in a drug distribution conspiracy. On October 6, 2010, Defendant appeared before this court with counsel and, pursuant to a plea agreement with the Government and after a thorough Rule 11 hearing, entered a guilty plea to a lesser-included charge of the drug distribution conspiracy contained in Count One of the Indictment.

In preparation for sentencing, a Presentence Investigation Report ("PSR") was prepared. Both Defendant and the Government filed objections to the PSR. On January 6 and 7, 2011, a sentencing hearing was held during which the court heard testimony and arguments regarding the objections to the PSR. The court overruled in part and sustained in part the parties' objections, and thereafter sentenced Defendant to 324 months' imprisonment.

1

Defendant filed a timely Notice of Appeal. In the appellate court, Defendant's attorney filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Defendant also filed an extensive *pro se* supplemental brief. The Fourth Circuit found that this court complied with the requirements of Rule 11 of the Federal Rules of Criminal Procedure. *United States v. Jones,* 466 F. App'x 180, 181 (4th Cir. 2012). Additionally, the Fourth Circuit found no procedural or substantive error in Defendant's sentence. *Id*. at 182. Finally, the Fourth Circuit noted that it had examined the entire record in accordance with its obligations under *Anders* and found no meritorious issues for appeal. *Id*. The court then affirmed Defendant's conviction and sentence.

On February 7, 2013, the Clerk of this Court received Defendant's motion for relief under 28 U.S.C. § 2255.

**II. DISCUSSION**

*A. Prosecutorial Misconduct (Grounds One and Two)*

Defendant raises two claims relating to alleged prosecutorial misconduct. Both claimed occurrences of misconduct took place prior to the entry of Defendant's guilty plea; namely, alleged used of immunized material to secure an indictment on Count One and alleged failure to produce certain material under *Brady v. Maryland*, 373 U.S. 83 (1963).

*1. Prosecutorial Misconduct – Grand Jury Proceedings*

Defendant's First Ground for Relief maintains the Government "presented immunized statements before a grand jury in violation of" Defendant's Fifth Amendment privilege in order to secure Defendant's indictment on Count One of the Indictment. Mem. in Supp. at 7 (ECF No. 105-

1).[1]  Defendant argues that based upon a cooperation agreement with state authorities and a later proffer agreement with the Government, "[i]t is clear from the face of the record that the Federal Government gave full immunity from prosecution to" Defendant. *Id*. at 8.  In support of this argument, Defendant contends that the proffer agreement he signed in February 2009 was not the same as the unsigned copy entered into evidence at sentencing, and that he was "unaware [when he signed the proffer] . . . that if [h]e broke any State or Federal law that the proffer agreement would become void and the government was free to use [h]is statements against [h]im to prosecute on Federal charges." *Id*. at 9-10.  Defendant argues the Government prosecuted him out of "vindictiveness" when he failed to "further [their] investigation by not providing the information of" all individuals involved in the drug conspiracy that Government agents were investigating. *Id*. at 13.

In response, the Government argues, without providing an affidavit from the agent involved, that

> while an agent testified during grand jury proceedings about some of Jones' incriminatory statements made after he apparently agreed to cooperate with Lexington County law enforcement, it is unclear which information was provided when Jones was cooperating after being advised of his Miranda rights, and which information was provided under the alleged proffer agreement.  However, the agent also testified about purchases of crack cocaine made by confidential sources and about a convicted co-conspirator's identification of Jones as someone with whom he had dealt drugs.

Mem. in Supp. at 9 (ECF No. 112-1).

As an initial matter, Defendant raised the issue contained in his First Ground for Relief regarding the alleged use of immunized statements on direct appeal.  *See* Supplemental Pro Se Brief

---

[1] Counts 2 through 5 of the Indictment were based upon purchases of "crack" cocaine made from the Defendant by undercover officers.

3

of Appellant at 37-44, *United States v. Jones*, 466 F. App'x 180 (4th Cir. 2012) (No. 11-4084). This issue was decided against him; therefore, he cannot relitigate it in this § 2255 motion. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (§2255 petitioner may not "recast, under the guise of collateral attack, questions fully considered by this court"). In its opinion denying Defendant appellate relief, the Fourth Circuit indicated that "[w]he have examined the entire record in accordance with our obligations under *Anders* and have found no meritorious issues for appeal." *United States v. Jones*, 466 F. App'x at 182. For this reason, this court's consideration of this claim is foreclosed.

Even assuming, for purposes of this discussion, that Defendant's claim for relief can be considered by this court, Defendant's claim is foreclosed by his knowing and voluntary guilty plea. Defendant makes no argument that there was some defect in the Rule 11 proceedings conducted by this court or that he was not competent to enter the plea; that is, that he was not "fully aware of the direct consequences of his plea." *United States v. Fisher*, 711 F.3d 460, 646 (4th Cir. 2013). Therefore, to establish involuntariness of the plea based upon prosecutorial misconduct, "a defendant who was fully aware of the direct consequences of the plea must show that (1) 'some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea' and (2) 'the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.'" *Id.* at 646-65 (quoting *Ferrara v. United States*, 456 F.3d 278, 290 (1st Cir. 2006)) . Much like a claim of ineffectiveness of counsel, "Defendant must show 'a reasonable probability that, but for the

4

misconduct, he would not have pleaded guilty and would have insisted on going to trial.'" *Id*. at 467 (quoting *Ferrara*, 456 F.3d at 294).[2]

In support of his § 2255 motion, Defendant declares that he discussed with trial counsel several times that he (Defendant) did not want to plead guilty to Count One; that he asked counsel if there was a possible defense to Count One based on his being given immunity from prosecution on that count; that counsel advised Defendant that he did not have a defense to Count One based on immunity and that counsel advised him not to go forward with challenging Count One; and that after the guilty plea, Defendant advised counsel that "I wanted to withdraw my guilty plea and go forward with challenging Count One to be dismiss[ed], but counsel [ ] advised me I could not take back my guilty plea." Aff. of Marcus D. Jones at 2-3 (ECF No. 105-2).

Even assuming for purposes of this motion that a violation of Defendant's constitutional rights occurred in the Government's presentation of its case before the grand jury, Defendant was not only aware of the Government's alleged "misconduct," but he was provided ample opportunity to decide whether he wished to challenge Count One of the Indictment, either through a motion to dismiss or trial, prior to his decision to plead guilty. *See generally* Tr. of Change of Plea Hrg. (hereinafter "Plea Tr.") (ECF No. 93, filed May 10, 2011). In fact, at the beginning of Defendant's Rule 11 hearing, Defendant filed a multi-page motion raising this issue of alleged use of immunized

---

[2]The Fourth Circuit's *Fisher* decision did not alter the law that a knowing and intelligent guilty plea forecloses a challenge to alleged constitutional violations occurring before entry of the plea. Rather, *Fisher* outlines the standard for defendants seeking to prove that a plea was involuntary based upon prosecutorial misconduct. In the case of Fisher, the misconduct which occurred not only preceded Fisher's entry of a guilty plea, but it was unknown to Fisher and the Government at the time Fisher entered his plea and "underpin[ned] the entire case against [Fisher] and induced his guilty plea." *Fisher*, 711 F.3d at 465.

statements in the securing of the federal indictment. *See* ECF No. 58, filed Oct. 6, 2010). During the Rule 11 hearing, Defendant specifically stated that

> I started cooperating even before I even signed a plea, so it was my intentions [sic] to cooperate. I don't want to stop. *I don't want to go to trial either.* But like I said, now that it is more clear to me and more things are said to me before about a downward departure and maybe this and maybe that, maybe this [the entry of a guilty plea] is the better decision for me. But I was just a little cloudy in judgment and I felt like I was up against the wall and had no choice. But now things are a lot more clearly [sic] and more stated, I believe this is a better plea.

*Id.* at 11-12 (emphasis added).

Defendant's affirmative admissions, presented under oath before this court at his Rule 11 colloquy, demonstrate that he was satisfied with the "advice, counsel, and representation" of his attorney, *id.* at 16, and that counsel had done everything that Defendant had asked him to do, *id.* Defendant thereafter admitted guilt to every material element of the offense charged in Count One. The court then specifically found Defendant was

> fully competent and capable of entering an informed plea of guilty, that he is aware of the nature of the charges and the consequences of pleading guilty, and that this plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements . . . .

*Id.* at 37.

Defendant has not presented any evidence, clear and convincing or otherwise, that his guilty plea was not knowing and voluntary. Moreover, Defendant has not made a colorable claim that the alleged misconduct informed his decision to forego his trial rights. The record establishes Defendant was aware, at the time he chose to enter his guilty plea, of the "misconduct" he alleges occurred in this case, and despite his having filed a motion and discussed with this court in open court his misgivings about Count One of the Indictment, Defendant chose to enter a knowing and voluntary

guilty plea. Accordingly, Defendant's First Ground for Relief fails and the Government is entitled to summary judgment on this claim.

### 2. *Prosecutorial Misconduct – Brady v. Maryland violation*

Defendant's Second Ground for Relief asserts the Government committed prosecutorial misconduct when it "failed to disclose exculpatory evidence[ ] as required by" *Brady v. Maryland*, 373 U.S. 83 (1963). Mem. in Supp. at 13 (ECF No. 105-1). Defendant contends the Government failed to produce a copy of the federal proffer agreement he signed in 2009. *Id*. at 15.

For the reasons argued by the Government, with which this court agrees and adopts, Defendant is not entitled to relief on this Ground for Relief. Accordingly, the Government is entitled to summary judgment on this Ground and it is dismissed with prejudice.

### B. *Ineffective Assistance of Counsel*

Defendant's remaining grounds for relief allege ineffective assistance of counsel, both in the trial court and on appeal. Specifically, Defendant argues counsel were ineffective in failing to attend the post-plea polygraph examination; in failing to raise a due process claim relating to the post-plea polygraph examination; and in failing to object to a guidelines enhancement of his base offense level pursuant to U.S.S.G. § 3C1.1 (and in failing to raise this issue on appeal).

The standard governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Defendant must first show that his counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Defendant. *Id*. As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id*. at 687. A reviewing court must "judge the reasonableness of counsel's challenged

7

conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *See also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).

In applying *Strickland* to claims of ineffective assistance of appellate counsel, this court accords appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)."'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *see also Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989) (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Although it is possible to bring a successful ineffective assistance of appellate counsel claim based on failure to raise a particular issue on direct appeal, the Supreme Court has reiterated that it is "difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id*. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To establish prejudice relating to actions of appellate counsel, Defendant must establish a reasonable probability that, but for his counsel's unreasonable failure to include a particular issue on appeal, he would have prevailed on his appeal. *See id*. at 285-86.

### 1. Post-Polygraph Interview

Defendant maintains he received ineffective assistance of counsel because counsel was not present during the interview conducted after the polygraph examination which was conducted

8

December 1, 2010. Defendant avers that "I advised defense counsel . . . before the polygraph examination that I wanted [h]im to be present at the proceeding." Jones Aff. at 1 (ECF No. 105-2). Defendant also attests that counsel "told me that he could not be present at any part of the polygraph proceedings because [h]e was not allowed to be present." *Id*. Defendant also asserts that he received ineffective assistance of appellate counsel in failing to argue that the Government violated his Fifth Amendment right to self-incrimination.

Defendant's claim regarding appellate counsel is disposed of easily. Several courts have concluded that "'a plea agreement that states in general terms the defendant's obligation to cooperate with the government can constitute a waiver of the defendant's Fifth Amendment privilege against self-incrimination.'" *United States v. Scruggs*, 356 F.3d 539, 546 (4th Cir. 2004) (finding defendant waived Fifth Amendment privileges by entering plea agreement) (quoting *United States v. Bad Wound*, 203 F.3d 1072, 1075 (8th Cir. 2000)). *See also United States v. Wise,* 603 F.2d 1101, 1104 (4th Cir. 1979) (finding that a defendant has "waived his fifth amendment privilege by entering into the plea agreement requiring him to cooperate with the government.").

As to Defendant's Sixth Amendment claim, a defendant whose Sixth Amendment right to counsel has attached is entitled to waive that right in connection with a police-initiated interrogation. *Patterson v. Illinois*, 487 U.S. 285, 292-93 (1988); *see also Michigan v. Harvey*, 494 U.S. 344, 352 (1990) ("[N]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney."). And, "in at least some cases[,] waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). In assessing whether there has been a knowing, intelligent, and voluntary waiver of the right to counsel, a court

9

is obliged to weigh "the particular facts and circumstances surrounding th[e] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), overruled in part on other grounds by *Edwards v. Arizona*, 451 U.S. 477 (1981).

In this case, the facts and circumstances surrounding this matter undermine Defendant's contention regarding his right to counsel at his post-polygraph interview.  First of all, Defendant, assisted by counsel, had entered into a plea agreement with the Government, in which he agreed to "be fully truthful and forthright with federal, state and local law enforcement agencies by providing full, complete and truthful information about all criminal activities about which he has knowledge." Plea Agreement at 4 (ECF No. 52).  This plea agreement included a provision that  Defendant

> agrees to submit to such polygraph examinations as may be requested by the Government and agrees that any such examinations shall be performed by a polygraph examiner selected by the Government.  Defendant further agrees that his refusal to take or  his failure to pass any such polygraph examination to the Government's satisfaction will result, at the Government's sole discretion, in the obligations of the Government within the Agreement becoming null and void.

*Id*. at 5-6.  Therefore, while the Government initiated the polygraph examination and selected the examiner, Defendant had agreed to it by executing the plea agreement.

Second, prior to the admission of the polygraph examination, Defendant's *Miranda* rights had been fully explained to him and he had waived them. There is no evidence, aside from Defendant's newly minted assertion (not presented under oath) that this explanation and waiver of *Miranda* rights was somehow limited just to the pre-polygraph interview and polygraph examination.  *See* Reply at 2 (ECF No. 121) (arguing that  "one [of the waivers] applied to the pre-test questioning and the other waiver applied to the polygraph questioning.").  Indeed, the record establishes that those constitutional rights had been explained to him on multiple occasions.

Third, at the time of the polygraph examination and the post-polygraph interview, Defendant was a thirty-seven year old adult possessing a GED certificate. Additionally, Defendant had, at the time of the interview, significant personal experience in both the state and federal criminal justice system as a result of various criminal proceedings instituted against him.[3]

Finally, despite Defendant's averment in support of his § 2255 motion, counsel was present with Defendant at the examiner's office when the polygraph procedures and Defendant's rights were again explained to Defendant. *See* Tr. of Sent. Hrg. at 78 (counsel indicating that "I was present at the – before the polygraph examination. And I met with the polygraph examiner and he advised me that the results of the polygraph examination would be better or more unaffected if I was not present, they would get a more accurate polygraph examination if I was not present.").

In these circumstances, the court finds Defendant never asserted his right to counsel regarding the post-polygraph interview. *See Butler*, 441 U.S. at 373 (holding implied waiver of Sixth Amendment rights permissible). As found by the undersigned at sentencing, Defendant

> had been advised of his rights before he began the polygraph and agreed to proceed, and he could have at any point said I choose not to speak further with you, or I don't want to take the polygraph. He would have faced the consequences of that being considered a breach of the plea agreement, but he did not do that.

Sent. Tr. II at 81-82.

Even assuming the court were to find counsel ineffective, Defendant cannot establish prejudice on this issue. The Government argues that the weight of drugs admitted to by Defendant in the December 1, 2010, post-polygraph interview was not used to increase Defendant's base

---

[3]Indeed, absent the Government's agreement to allow him to plead guilty to the lesser-included offense of which he was convicted, he faced a mandatory statutory sentence of life imprisonment based upon two prior qualifying offenses. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846 and 851.

11

offense level. Even discounting the admissions made by Defendant in the December 1, 2010, post-polygraph interview, the information known to the Government prior to Defendant's arrest in 2010 was more than sufficient to drive the base offense level calculation of Defendant's sentence. *See* Presentence Report at ¶¶ 17-28 (ECF No. 61, filed Dec. 23, 2010). In other words, the original calculation of a base offense level 32, coupled with the two enhancements applied, produced an adjusted offense level 36, with criminal history category IV. The resulting sentencing range would have been 262-327 months' imprisonment. Defendant was sentenced to 324 months' imprisonment, which was within that range. Accordingly, Defendant cannot establish prejudice, and the Government is entitled to summary judgment regarding the alleged ineffectiveness of both trial and appellate counsel on this issue.

### 2. *Obstruction of Justice Enhancement*

Defendant's last Ground for Relief contends trial counsel was ineffective in failing to argue against the sentence enhancement for obstruction of justice, and that appellate counsel was ineffective in failing to raise this issue on appeal. Defendant's contention, that trial counsel did not object to the enhancement, is not correct. Counsel objected, and this court heard testimony and then overruled in part and sustained in part the objection. After hearing testimony, the court found that Defendant

> testified today that you knew, you had thought you had figured out who the CI was, that you were very upset and that you did make the threat as to harm to the CI if you had the opportunity to do so. And so for those reasons I believe the obstruction enhancement is appropriate.

*Id.* at 97.

On appeal, counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Defendant also filed an "extensive pro se supplemental brief" in support of the appeal. *Jones*, 466

F. App'x at 181. In the *pro se* brief, Defendant specifically argued that this court erred in applying the obstruction enhancement, citing *United States v. Brooks*, 957 F.2d 1138 (4th Cir. 1992). *See* Supplemental Pro se Br. of Appellant at 58, *United States v. Jones*, 466 F. App'x 180 (4th Cir. 2012) (No. 11-4084). The Fourth Circuit rejected Defendant's position, indicating that "[w]e have considered all of the arguments raised in Jones' pro se supplemental brief and conclude they lack merit." *Jones*, 466 F. App'x 181 at n.*.

Even assuming ineffectiveness in the failure to raise the issue on appeal, Defendant cannot establish prejudice. He raised the issue himself, the appellate court "considered all of the arguments raised" by Defendant, and "conclude[d] they lack merit." Therefore, Defendant's claims relating to alleged ineffectiveness on this issue are rejected, and the Government is entitled to summary judgment.

### III. CONCLUSION

For the above-discussed reasons, the Government's motion for summary judgment is **granted** and this motion is dismissed with prejudice.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

    (c)(3) The certificate of appealability . . . shall indicate which specific
    issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676,

683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

                                              <u>s/ Cameron McGowan Currie</u>
                                              CAMERON MCGOWAN CURRIE
                                              UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 3, 2013